Mellon v Ribaudo (2021 NY Slip Op 05963)





Mellon v Ribaudo


2021 NY Slip Op 05963


Decided on November 3, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 3, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ANGELA G. IANNACCI
LINDA CHRISTOPHER
PAUL WOOTEN, JJ.


2018-01419 
2018-03885
 (Index No. 69592/14)

[*1]Sandra Mellon, etc., appellant,
v
Thomas P. Ribaudo, etc., et al., respondents.


Rheingold Giuffra Ruffo & Plotkin, LLP, New York, NY (Jeremy A. Hellman and Sherri L. Plotkin of counsel), for appellant.
Santangelo, Benvenuto & Slattery (Rubin Sheeley Paterniti Gonzalez Kaufman, LLP, New York, NY [James W. Tuffin], of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice and wrongful death, etc., the plaintiff appeals from (1) an order of the Supreme Court, Suffolk County (Daniel Martin, J.), dated December 11, 2017, and (2) a judgment of the same court entered January 22, 2018. The order granted the defendants' motion for summary judgment dismissing the complaint. The judgment, upon the order, is in favor of the defendants and against the plaintiff dismissing the complaint.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is affirmed; and it is further,
ORDERED that one bill of costs is awarded to the defendants.
The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
On July 5, 2012, Charles Mellon (hereinafter the decedent) was admitted to nonparty Stony Brook University Hospital (hereinafter the hospital) due to complaints of chest pain. On that date, the decedent underwent a cardiac catheterization and intravascular ultrasound, which resulted in a finding of, among other things, 74% or 75% stenosis, or narrowing, of the mid-right coronary artery, to be treated with medication. On July 12, 2012, the decedent saw the defendant Thomas P. Ribaudo for a "second opinion" at the office of the defendant North Suffolk Cardiology Associates, P.C. (hereinafter NSC). Ribaudo decided to continue the decedent's treatment with medication, without recommending an angioplasty procedure, based upon the decedent's "calculated percent stenosis." Ribaudo also examined the decedent on July 26, 2012, due to complaints of chest and arm discomfort, and prescribed certain medications and instructed the decedent to go to the hospital if he continued to experience discomfort despite taking the prescribed medications.
On August 2, 2012, the decedent was again admitted to the hospital with complaints of chest pain, and the defendant Jonathan B. Weinstein performed a cardiac catheterization, which resulted in "similar" findings to those made on July 5, 2012. Weinstein concluded that the decedent had nonobstructive coronary artery disease and recommended, inter alia, "[m]aximiz[ing] medical therapy." Following the decedent's discharge from the hospital, the decedent was again examined by Ribaudo on August 27, 2012, and Ribaudo altered the decedent's medication regimen.
On October 19, 2012, the decedent underwent a stress test at NSC, which was interpreted by the defendant Jason A. Sadlofsky. Sadlofsky noted that the stress test was "[a]bnormal," with EKG signs of ischemia—an inadequate supply of blood to the heart, but was not clinically indicative of ischemia. Sadlofsky concluded that the stress test did not show that the decedent needed emergent care.
On November 20, 2012, the decedent suffered cardiac arrest and died. The decedent's wife, Sandra Mellon, individually and as executor of his estate (hereinafter the plaintiff), commenced this action, inter alia, to recover damages for medical malpractice and wrongful death. The plaintiff alleged that the defendants failed to properly diagnose and treat a blockage in the decedent's coronary arteries, which caused the decedent to suffer a fatal myocardial infarction and cardiopulmonary arrest. Thereafter, the defendants moved for summary judgment dismissing the complaint. In an order dated December 11, 2017, the Supreme Court granted the defendants' motion. On January 22, 2018, the court entered a judgment dismissing the complaint. The plaintiff appeals.
"The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (Hayden v Gordon, 91 AD3d 819, 820 [internal quotation marks omitted]; see Scopelliti v Westmed Med. Group, 193 AD3d 1009, 1010). "On a motion for summary judgment dismissing the complaint in a medical malpractice action, the defendant doctor has the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (Hayden v Gordon, 91 AD3d at 820-821; see Scopelliti v Westmed Med. Group, 193 AD3d at 1010).
Here, the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint by submitting, inter alia, the affirmation of their expert, who concluded that the treatment provided by the defendants was in accordance with accepted standards of care, and that, in any event, any alleged departures were not a proximate cause of the decedent's death (see Scopelliti v Westmed Med. Group, 193 AD3d at 1011). Specifically, the defendants' expert opined that the imaging obtained on July 5, 2012, and on August 2, 2012, did not reflect significant coronary obstructive disease or "any significant obstruction or narrowing in any of [the decedent's] coronary arteries," and that therapy with medications was the appropriate course of treatment. The expert further opined that the results of the stress test did not warrant any immediate cardiological care or intervention, or an additional cardiac catheterization or the placement of a stent. The expert added that the defendants' conclusions were supported by the autopsy findings, among other things, that the decedent's coronary arteries were "unobstructed."
In opposition, the affidavit of the plaintiff's expert failed to raise a triable issue of fact. The plaintiff's expert did not refute the specific assertions of the defendants' expert that the imaging obtained on July 5, 2012, and on August 2, 2012, did not show significant coronary obstructive disease or "any significant obstruction or narrowing" of the decedent's coronary arteries (see Reid v Soults, 138 AD3d 1087, 1091). The plaintiff's expert noted the presence of "mild" narrowing of the left anterior descending artery, and did not opine that such condition necessitated surgical intervention. The plaintiff's expert also failed to address the assertions of the defendants' expert that the findings of the stress test did not warrant any further intervention or procedures. While the plaintiff's expert opined that the defendants failed to diagnose a coronary artery dissection, the plaintiff did not mention such condition in her complaint or bill of particulars. Thus, the plaintiff could not rely on a new theory of liability asserted for the first time in opposition to the defendants' motion for summary judgment (see Xiao Yan Ye v Din Lam, 191 AD3d 827, 828; Garcia v Richer, [*2]132 AD3d 809, 810).
The parties' remaining contentions are either not properly before this Court or without merit.
Accordingly, the Supreme Court properly granted the defendants' motion for summary judgment dismissing the complaint.
DILLON, J.P., IANNACCI, CHRISTOPHER and WOOTEN, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court